## 49295. DEKLE v. TODD.

CLARK, Judge.

In this suit brought by a servant against his master based on his having been required to work in an unsafe place, we are constrained to reverse the trial court's denial of the defendant master's summary judgment motion because this appeal is controlled adversely to the employee under the cases of *Taff v. Harris,* 118 Ga. App. 611 (2) (164 SE2d 881) and *Barrow County Cotton Mills v. Burton,* 35 Ga. App. 90 (132 SE 128).

1. " '[A] servant assumes the ordinary risks of his employment, and is bound to exercise his own skill and diligence to protect himself, and in cases of injury it must appear that the servant did not know of the danger and had not equal means of knowing such fact, and by the exercise of ordinary care could not have known thereof. Code § 66-303; *Ludd v. Wilkins,* 118 Ga. 525 (45 SE 429).' *Holman v. American Auto. Ins. Co.,* 201 Ga. 454, 460 (39 SE2d 850). 'If the danger is obvious, and as easily known to the servant as to the master, the latter will not be liable for failing to warn him of it.' *Crown Cotton Mills*

*v. McNally,* 123 Ga. 35 (3) (51 SE 13). If the servant 'had equal means with the master of discovering the danger, any injury resulting to him would be the result of his own fault.' *McDonnell v. Central of Ga. R. Co.,* 118 Ga. 86, 89 (44 SE 840)." *Taff v. Harris,* 118 Ga. App. 611 (2), supra. Furthermore, "Although the master may have ordered the servant to go to a particular place upon the roof . . . the dangerous condition of the place was actually known to the servant. The servant, therefore, can not recover from the master for an injury sustained by the servant while in the performance of the work as a result of the servant's stepping into a rotten place in the roof." *Barrow County Cotton Mills v. Burton,* 35 Ga. App. 90, supra.

In applying these principles to the instant appeal we adopt the version of the incident as recited in the well-argued but losing brief presented in behalf of the plaintiff employee who sued his employer for injuries sustained when he fell from a roof while both parties were engaged in a two-man repair job on an apartment located on defendant's farm. That brief designates the servant as "Appellee" and the master as "Appellant." We quote therefrom as follows: "Appellant told appellee to stand on a 2″ x 4″ plate line located approximately eight to nine feet above the ground so that appellant could hand sheets of plywood to appellee, and appellee could place the sheets of plywood on the roof of the apartment. Appellee tried to tell appellant that there was not enough room on the plate line, that the old existing roof was rotten and that it was dangerous. But because of the possibility of rain that day, appellant was in a hurry to get the plywood decking on the roof, and insisted that appellee get up on the 2″ x 4″ plate line, even though scaffolding was available and located only 60-75 yards away. Since appellant was the boss and appellee was working for him, appellee complied with his employer's instructions.

"The sheets of plywood were approximately 4′ x 6-8′ in size and weighed roughly 60-70 pounds each. Appellant passed the plywood to appellee by holding the plywood at the bottom and sticking it straight up in the air so that appellee could grab the plywood, pull it up and sling it around on top of the roof. The fourth sheet of plywood that appellee received in this manner caught on a tree

limb and started to fall. Seeing that the plywood was going to strike appellant in the back, appellee yelled 'look out,' grabbed the plywood and slung it against the building. Appellant was bending over to pick up another piece of plywood, and appellee prevented the plywood from hitting appellant in the back, but in doing so, he lost his balance and fell from the plate line. Appellee landed on a concrete surface, catching himself on his hands and hitting his right knee on the concrete."

We recognize the situation that defendant was the "boss" but plaintiff's voluntary compliance with his employer's request despite his own admitted knowledge of the dangers (R. 97) brings him within the rule stated in *Fricks v. Knox Corp.,* 84 Ga. App. 5, 10 (65 SE2d 423). There this court said "a person can not undertake to do an obviously dangerous thing, even though directed by another, under whom he is working, to do so, without assuming the risks incident thereto, and without himself being guilty of such a lack of due care for his own safety as to bar him from recovery if he is injured in carrying out such directions." See also *Wood v. Pyntree Paper Co.,* 29 Ga. App. 81, 85 (114 SE 83).

Plaintiff earnestly urges that *Pappadea v. Clifton,* 96 Ga. App. 115 (99 SE2d 455) requires us to affirm the trial court. There the headnote recites that it is a "question of fact for the jury whether or not the master was negligent in giving the command and whether or not the servant was negligent in obeying the command under such circumstances." But the body of the opinion establishes that "under such circumstances" refers to the assurances of safety from the master which accompanied his command. Furthermore, that opinion recognizes the controlling principles we have herein followed because the court there states at page 121 that the employee "is not excused for actual negligence by reason of the fact that the injury results from his obedience to such a direct and specific command, when it appears that he failed to exercise ordinary care or that the risk was obvious, or that he knew or had equal means with the master of knowing of the unusual peril involved in a compliance with the command. . ." Additionally, in the case sub judice the plaintiff himself was cognizant of the

danger, he having told the defendant master "that it was dangerous" (R. 97) before ascending to the roof.

2. Plaintiff also sought to rely upon the Occupational Safety and Health Act of 1970 (29 USCA § 651). OSHA (which is the acronym by which this statute is commonly referred to) does not apply here because the Act states that it does not "enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment." 29 USCA § 653 (b) (4). Moreover, it is obvious that one engaged in repairing a roof located on his farm in Clarke County, Georgia, can not be said to be "engaged in a business affecting commerce" so as to be within OSHA's definition of an employer. 29 USCA § 652 (b).

3. "If the evidence introduced by movant pierces the pleadings and discloses the absence of a right of recovery, the grant of summary judgment is proper and should follow. *Scales v. Peevy,* 103 Ga. App. 42 (118 SE2d 193); *General Gas Corp. v. Carn,* 103 Ga. App. 542 (120 SE2d 156), both approved in *Crutcher v. Crawford Land Co.,* 220 Ga. 298, 304 (138 SE2d 580)." *Brown v. J. C. Penney Co.,* 123 Ga. App. 233, 234 (180 SE2d 364).

*Judgment reversed. Bell, C. J., and Quillian, J., concur.*

ARGUED MAY 6, 1974 — DECIDED JUNE 18, 1974.

*Erwin, Epting, Gibson & Chilivis, Gary B. Blasingame,* for appellant.
*William T. Gerard,* for appellee.